OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

July 14, 1999

The Honorable James Warren Smith, Jr.
Frio County Attorney
500 East San Antonio Street, Box 1
Pearsall, Texas 78061-3100

Opinion No. JC-0080

Re:     Whether under article III, section 52 or article XI, section 3 of the Texas Constitution a county may pay registration fees for a county official or county employee to attend a state association conference, either mandatory or voluntary, and related questions     (RQ-1226)

Dear Mr. Smith:

You ask three questions about the constitutionality of various uses of county funds in light of article III, section 52 and article XI, section 3 of the Texas Constitution. You ask first whether a county constitutionally may pay for registration "at the different elected officials' state associations . . . to attend either mandated . . . or elective conferences" and for the officials' lodging while they attend the conferences. Letter from Honorable James Warren Smith, Jr., Frio County Attorney, to the Attorney General of Texas (Nov. 23, 1998) (on file with Opinion Committee) [hereinafter "Request Letter"]. You ask second whether a county constitutionally may pay in advance for public notices placed in the local newspaper. *Id.* at 2. You ask third whether a county may pay the salaries of county officials and employees prior to the regularly scheduled pay day. *Id.* With the possible exception of the payment of county officials' and employees' salaries in advance of services rendered, we believe the commissioners court reasonably may find that the expenditures satisfy the constitutional requisites.

Your questions are premised upon the prohibitions of article III, section 52(a) and article XI, section 3 of the Texas Constitution. Both provisions restrict a county's grants of public funds and loans of credit:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county . . . to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .

TEX. CONST. art. III, § 52(a).

> No county . . . shall hereafter . . . make any appropriation or
> donation to [a private corporation or association] or in anywise loan
> its credit . . . .

*Id.* art. XI, § 3.

Each of these constitutional provisions restricts the use of public money to the accomplishment of public purposes. As the Texas Court of Civil Appeals described article III, section 52, "[t]he clear purpose of this constitutional provision is to prevent the gratuitous application of funds to private use. The constitution does not, however, invalidate an expenditure which incidentally benefits a private interest if it is made for the direct accomplishment of a legitimate public purpose." *Brazoria County v. Perry*, 537 S.W.2d 89, 90-91 (Tex. Civ. App.–Houston [1st Dist.] 1976, no writ) (citations omitted); *accord* Tex. Att'y Gen. Op. Nos. JC-0011 (1999) at 2, JM-1229 (1990) at 5 (quoting *Brazoria County*, 537 S.W.2d at 90-91). Article XI, section 3's purpose is the same. *See* Tex. Att'y Gen. Op. No. JM-1194 (1990) at 1-2 (listing many constitutional provisions that prohibit grant of public funds and lending of public credit to private individuals or organizations); *see also* 2 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 676-77 (1977) (discussing article XI, section 3).

This office has determined that a grant or loan of credit to a private entity contravenes the constitution only if it serves no public purpose or if the governing body fails to attach conditions to the payment to ensure that the public purpose will be accomplished. *See* Tex. Att'y Gen. Op. No. JC-0011 (1999) at 2-3. In Attorney General Opinion JM-1229 this office concluded that a lending of credit violates the constitution unless it accomplishes a public purpose and is accompanied by conditions to ensure that the loan will be used for the public purpose. *See* Tex. Att'y Gen. Op. No. JM-1229 (1990) at 6. "The determination that a particular extension of credit meets the constitutional requirements is in the first instance within the sound discretion of the governing body, subject to judicial review." *See id.* at 6-7. This office also has determined that a lending of credit for constitutional purposes does not include a "mere extension of credit by deferred collection of fees in a sale of goods or services." Tex. Att'y Gen. Op. No. DM-382 (1996) at 14. The constitutionality of a direct grant of public funds is analyzed the same as a lending of credit. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995); Tex. Att'y Gen. Op. No. JC-0011 (1999) at 2-3. With this understanding of the two constitutional provisions you cite, we consider your questions.

You first ask about the county's payment of registration fees and lodging expenses so that county officials may attend state conferences, attendance at which may be mandated by statute or optional. You are concerned that the payment of county funds to an official's state association may be a lending of credit to the association and that the payment of county funds to a hotel or motel may be a lending of credit to a corporation.

The payments about which you ask are "grant[s] [of] public money" to private entities, in the words of article III, section 52, or "appropriation[s]" to private entities, in the words of article XI, section 3. Thus, in accordance with Attorney General Opinion JM-1229, we must consider whether a commissioners court reasonably may find that these expenditures serve a valid public purpose and that the county has attached appropriate conditions to the expenses to ensure that the public purpose is accomplished. *See* Tex. Att'y Gen. Op. No. JM-1229 (1990) at 6.

We believe that a county commissioners court reasonably may find that funding officials' or employees' registration for various conferences and hotel accommodations while the official or employee attends the conference serves a public purpose, regardless of whether attendance at the conference is mandatory or optional. *See* Tex. Att'y Gen. LO-97-077, at 3 (stating that membership and participation in private professional association may benefit public employer). You contend that the county officials' or employees' attendance at the various conferences accomplishes a public purpose because the training and education the elected officials and county employees obtain at these conferences "increase their competency in their public positions." Request Letter, *supra*, at 3. Analogously, the Texas Court of Civil Appeals has recognized that paying an employee's certification-course expenses "represent expenditures for the direct accomplishment of a legitimate public purpose." *Brazoria County*, 537 S.W.2d at 91. Nevertheless, whether a particular expenditure will serve a public purpose is a determination for the commissioners court, not this office, to make and is subject to review by a court.

We have not been informed whether the county commissioners court conditions use of the county funds on accomplishment of a public purpose. The commissioners court must ensure that the payment is "premised upon some basis of fact." *See* Tex. Att'y Gen. Op. No. H-992 (1977) at 2. The commissioners court might, for example, require the requesting official or employee to submit with the request for funding a copy of the agenda or to describe the subject matter of the conference. The substance and adequacy of the conditions are matters for the commissioners court, not this office, to determine and are, again, subject to review by a court.

You next ask whether a county constitutionally may pay for public notices to be printed in the local newspaper before the notices are published. You explain that the county publishes notices on behalf of litigators in some instances and on its own behalf in other instances. *See* Request Letter, *supra*, at 2. In all instances, however, you indicate that the local publisher refuses to print the notices until payment is received:

> Our district and county clerks often have to publish notices on behalf of litigators but without specifically stating to the newspaper publisher that the billing for these notices should be submitted to the attorneys so requesting publication. The county and district clerks as well as the county auditor (who also submits notices to be published in local newspaper soliciting competitive bids . . . ) know what bills that they are to pay the publisher from the county's general fund.

> The publisher now refuses to publish any more COUNTY NOTICES
> UNTIL ALL notices submitted by the clerks and the auditor are paid
> even though it was plainly designated to the publisher which bills
> were strictly the county's and those which were submitted by the
> attorneys to the clerks (in conjunction with the attorneys' lawsuits)
> and which clerks, in turn, submitted to the publisher for publication.
> And, furthermore, from this time on, the publisher WILL NOT
> PUBLISH WHAT WILL BE CLEARLY COUNTY NOTICES
> WITHOUT BEING PAID IN ADVANCE.

*Id.*

With respect to both of these situations, the important inquiry is whether the proposed county expenditure will serve a public purpose and whether the county has attached sufficient conditions to the expenditure to ensure that the money achieves a public purpose. The county commissioners court is the proper arbiter of these issues, although its decision is subject to review by an appropriate court.

Third, you ask whether, at the county commissioners court's direction, the county clerk, county treasurer, and county auditor may cosign warrants for county officials' and employees' salaries before the regularly scheduled payday. *See id.* You ask about two different situations. In the first, the regularly scheduled payday falls on a holiday. In this scenario, the county pays its officials and employees before the holiday, on the last workday of the pay period. In the second situation, the county pays officials and employees in advance for services that have not yet been rendered. We conclude that the payment is constitutionally permissible in the first situation, but that payment in advance in the second situation is constitutionally questionable.

In the first situation, where officials and employees are paid after they have rendered all services for which they will be compensated, the county, as employer, does not gratuitously grant public funds nor lend public credit. The county has received the full measure of services it is due in consideration of the salaries. *Cf.* TEX. GOV'T CODE ANN. § 662.010 (Vernon Supp. 1999) (restricting holiday payment to state employee whose first day is day after holiday or whose last day is day before holiday). Consequently, neither article III, section 52 nor article XI, section 3 applies, and the county need not articulate a public purpose for the preholiday payment.

In the second situation, the county may unconstitutionally be granting public funds to a private individual with no public purpose. An advance of salary is a loan, a grant of public money to an individual. *See Hill County v. Bryant & Huffman*, 264 S.W. 520, 522 (Tex. Civ. App.–Waco 1924), *aff'd in pertinent part*, 16 S.W.2d 513, 516 (Tex. 1929); Tex. Att'y Gen. Op. Nos. JM-1194 (1990) at 2, H-74 (1973) at 10. As this office suggested in Attorney General Opinion H-74, typically "[a] person's salary . . . is his to do with as he wishes. It cannot be advanced to him by the agency because the advance would then constitute a personal loan to him of public funds to be used for private purposes." Tex. Att'y Gen. Op. No. H-74 (1973) at 10. Under article III, section 52 of the

Texas Constitution, a commissioners court may not grant an advance of salary *solely* to benefit an individual. *See Grimes v. Bosque County*, 240 S.W.2d 511, 514 (Tex. Civ. App.–Waco 1951, writ ref'd n.r.e.).

Nevertheless, it is for the commissioners court to determine whether, in a particular situation, early payment of salaries serves a public purpose. The commissioners court also must determine that the early payment is sufficiently conditioned to ensure that the public purpose will be accomplished. The commissioners court's determinations may be subject to judicial review.

## S U M M A R Y

Neither article III, section 52 nor article XI, section 3 of the Texas Constitution precludes a county commissioners court from paying a county official's or county employee's registration fee to attend a conference, or for lodging while the official or employee attends the conference, so long as the commissioners court determines that the expenditures will serve a public purpose and attaches conditions to the expenditure to ensure the accomplishment of the public purpose. Likewise, neither article III, section 52 nor article XI, section 3 prohibits a county from paying a publisher in advance to publish public notices in the local newspaper, so long as the county commissioners court determines that the expenditure serves a public purpose and attaches sufficient conditions to the expenditure. A county commissioners court may pay officials' and employees' salaries before the regularly scheduled payday if the county has received all services it is due in consideration of the payment. But the county may not, under article III, section 52 and article XI, section 3 of the Texas Constitution, pay officials' and employees' salaries in advance of the services being rendered unless it finds that some public benefit will derive from doing so and that the early payment is sufficiently conditioned to ensure that the public purpose will be accomplished.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General